STATE of Iowa, Appellee,

v.

**Richard Lyle McSORLEY, Appellant.**

No. 95–452.

Supreme Court of Iowa.

June 19, 1996.

808

Joseph L. Marks of Marks, Marks & Marks, Urbandale, for appellant.

Thomas J. Miller, Attorney General, Martha E. Boesen, Assistant Attorney General, John P. Sarcone, County Attorney, and Odell McGhee, Assistant County Attorney, for appellee.

Considered by HARRIS, P.J., and LARSON, CARTER, SNELL, and TERNUS, JJ.

PER CURIAM.

Richard Lyle McSorley appeals from his conviction, following a bench trial, for second-degree fraudulent practice in violation of Iowa Code sections 714.8(4) and 714.10 (1995). McSorley contends the district court erred in finding him guilty of second rather than fifth-degree fraudulent practice. We affirm.

Between June 22, 1994, and July 7, 1994, McSorley knowingly made false entries in or alterations to the corporate records of Coastal Mart in his capacity as manager of the store. These entries involved concealment of a $4559.86 deficiency in the store's cash receipts. There is no evidence that McSorley actually obtained any money, services, or property as a result of the false entries or alterations. The district court eventually found McSorley guilty of second-degree fraudulent practice, entered judgment, and sentenced him to a suspended five-year prison term and probation.

On appeal, McSorley admits to committing a fraudulent practice under section 714.8(4):

A person who does any of the following acts is guilty of a fraudulent practice.

. . . .

4. Makes any entry in or alteration of any public records, or any records of any corporation, partnership, or other business enterprise or nonprofit enterprise, knowing the same to be false.

His challenge is based on the word "involved" in the penalty sections of the statute. Sections 714.9 through 714.13 classify fraudulent practice in degrees from first to fifth, depending on the amount of money or value of property or services "involved." Iowa Code §§ 714.9, 714.10, 714.11, 714.12, 714.13. McSorley argues the word "involved" means "obtained" and that for purposes of second-degree fraudulent practice the State had to prove he received money, property, or services valued between $1000 and $10,000. *See id.* § 714.10. Therefore, he contends, because the State failed to prove he received or obtained anything of value, he should have been found guilty of only fifth-degree fraudulent practice (amount of value involved does not exceed $100). *See id.* § 714.13.

The State contends the word "involved" plainly and unambiguously means "being affected or implicated." The State thus argues the degree of fraudulent practice is determined by the amount of money or value of

property and services falsely entered or altered, as opposed to the amount actually obtained as a result of the fraud.

■ In considering statutory questions, our review is to correct errors of law. *State v. Stanford*, 474 N.W.2d 573, 575 (Iowa 1991).

In 4 John L. Yeager and Ronald L. Carlson, *Iowa Practice: Criminal Law and Procedure* (1979) [hereinafter Yeager & Carlson], Professor Yeager believes ambiguity exists in the fraudulent practice statute because "reasonable minds may differ as to what is meant by the word 'involved' in this context." Yeager & Carlson § 330. Yeager asserts the meaning of "involved" becomes clear upon reading the explanation accompanying the House File version of the fraudulent practice bill, H.F. 237, 67 G.A. (1977):

> The degree of crime and severity of penalty are primarily determined by *the amount of money or value of property or services obtained* by committing a fraudulent practice [italics added].

4 Yeager & Carlson § 330. Yeager concludes, "[t]hus 'involved' means 'obtained.'" *Id.*[1] Another commentator disagrees with Yeager's conclusion and ultimately believes "involved" should be given its dictionary meaning of "[i]mplicated, affected or concerned in some degree." *See* Kermit L. Dunahoo, *The New Iowa Criminal Code*, 29 Drake L.Rev. 237, 386 (1979–80) [hereinafter Dunahoo].

■ We believe the word "involved" is ambiguous. When the statutory language is ambiguous, the manifest intent of the legislature is sought and will prevail over the literal import of the words used. *Sourbier v. State*, 498 N.W.2d 720, 723 (Iowa 1993). One consideration is the legislative history of the statute. *DeMore v. Dieters*, 334 N.W.2d 734, 737 (Iowa 1983). The language of the fraudulent practice statute should be construed in

light of the acts that are prohibited. It is also instructive to compare this statute with the language of the theft statute in their historical context. When statutes relate to the same subject matter or to closely allied subjects, they are said to be in *pari materia* and must be construed in light of their common purpose and intent so as to produce a harmonious body of legislation. *Rush v. Sioux City*, 240 N.W.2d 431, 445 (Iowa 1976); *see also State v. Sullins*, 509 N.W.2d 483, 485 (Iowa 1993) (when more than one statute is pertinent, the statutes are considered together to harmonize them). The *in pari materia* rule applies with particular force to statutes passed at the same session of the legislature. *Iowa Farm Serum Co. v. Board of Pharmacy Examiners*, 240 Iowa 734, 740, 35 N.W.2d 848, 851 (1949). The fraudulent practice and theft statutes were passed by the 66th General Assembly in 1976, finalized by the 67th General Assembly in 1977, and became effective in January 1978 as part of the new Iowa Criminal Code. *See* 1976 Iowa Acts ch. 1245, §§ 1401, 1408; 1977 Iowa Acts ch. 147, §§ 14, 17, and ch. 149, §§ 3, 4; Iowa Code ch. 714 (1979). The new Code was the product of the first comprehensive restructuring of crimes, criminal procedure, and sentencing in Iowa since 1851. Dunahoo, 29 Drake L.Rev. at 240–41. As initially enacted, any violation of the fraudulent practice statute was to be punished as an aggravated misdemeanor, but prior to its effective date, the present series of graduated punishments was substituted.

■ One of the purposes behind the Code revision was to consolidate repetitive and overlapping provisions and eliminate redundancies in the old Code that had arisen from a process of ad hoc, piecemeal amendment.[2] Mark E. Schantz, *Objectives of Criminal Code Revision: Guidelines to Evaluation*, 60

---

1. The concept of money, property, or service "obtained" is also suggested in § 714.14, which defines value for purposes of fraudulent practices.

2. The current section 714.8(4) likely had the following two predecessors in the 1977 Code:

> 491.43. **Keeping false accounts.** The intentional keeping of false books or accounts shall be a misdemeanor on the part of any officer,

agent, or employee of the corporation guilty thereof, or of anyone whose duty it is to see that such books or accounts are correctly kept. 713.26. **False entries in corporation books.** Any officer, agent, or employee of any corporation who shall knowingly make or knowingly authorize to be made false entries upon the books of such corporation ... shall be guilty of a felony....

Iowa L.Rev. 430, 430–33 (1975). If the word "involved" is interpreted to mean "obtained," there would be considerable duplication between the fraudulent practice provisions and the theft provisions rendering the former redundant or meaningless. Dunahoo, 29 Drake L.Rev. at 385–86. As mentioned above, Yeager believes that in its present form, the classification of fraudulent practice for penalty purposes depends on the value of the property "obtained." 4 Yeager & Carlson § 329. Yeager asserts that therefore the offense is no longer an attempted theft as initially intended, but a completed theft, that each fraudulent practice act can also be prosecuted as a violation of the theft by deception section, that consequently the fraudulent practice section has become an unnecessary duplication of the theft section, and that the Code is left without a fraudulent practice provision. *Id.* This interpretation of the word "involved" not only defeats one of the very purposes behind the Code revision, but also contravenes the maxim of statutory construction, which states the court must presume the entire statute is intended to be effective and yield a reasonable result. *De-More,* 334 N.W.2d at 737; Iowa Code § 4.4(2), (3) (1995).

The first nine subparts of section 714.8 criminalize a variety of conduct that does not require a taking or obtaining of anything of value in order for the offense to be complete. As a result, it would be manifestly inappropriate to interpret the words "amount of money or value of property involved" as used in the penalty provisions of this legislation as referring to amounts taken or obtained.

With the exception of subparts 6 and 9 of the statute, which involve an intent to defraud, the other provisions in the first nine subparts of section 714.8 require an act, the normal consequence of which is to accomplish some improper result apart from the prohibited act itself.[3] This may be an attempted theft, but it may also involve other improper

purposes such as creating a false appearance that is likely to mislead others to their detriment. It is the latter type of conduct that was the basis for this defendant's conviction. In applying the penalty provisions of the act to this type of conduct, the trier of fact must determine the extent to which the true facts have been misstated or concealed in terms of a quantitative description. If a qualitative misrepresentation is established that is incapable of being quantified as to value or amount, then the penalty provision of section 714.11(3) applies.

McSorley's acts in the present case misrepresented the financial condition of his employer by a quantifiable amount of money totaling $4559.86. This being an amount in excess of $1000 but not more than $10,000, the offense fell squarely within the provisions of section 714.10. Therefore, the district court properly applied this section in imposing sentence upon McSorley.

**AFFIRMED.**

---

**3.** The Iowa Uniform Jury Instructions for these nine crimes suggest that the offenses described in subparts 6 through 9 of the act require a showing of intent to defraud and that those described in subparts 1 through 5 do not. With respect to subparts 6 and 9, this distinction appears to follow the language of the statute. With respect to subparts 7 and 8, the distinction appears to be debatable and, indeed, subpart 8 appears to be only a slightly different version of the same situation embraced in subpart 2.