STATE of Iowa, Plaintiff–Appellee,

v.

Dameon Dashawn TUCKER,
Defendant–Appellant.

No. 10–1954.

Court of Appeals of Iowa.

Jan. 19, 2012.

Mark C. Smith, State Appellate Defender, and Robert P. Ranschau, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Kevin Cmelik, Assistant Attorney General, Tyler J. Buller, Legal Intern, Douglas Hammerand, Assistant Attorney General, and Michael L. Wolf, County Attorney, for appellee.

Considered by EISENHAUER, P.J., and DOYLE and MULLINS, JJ.

MULLINS, J.

During the late night and early morning hours of December 15–16, 2009, emergency personnel responded to an apartment fire at the Bluffs Apartments in Clinton. In the apartment, firefighters discovered the lifeless bodies of Angel Herman and her two-year-old son, Cyrus Shoup. Following an investigation, the State charged Dameon Tucker with two counts of first-degree murder and one count of first-degree arson. The first murder count alleged the premeditated murder of Angel in violation of Iowa Code section 707.2(1), and the second murder count alleged felony arson murder of Cyrus in violation of section 707.2(2) (2009). A trial was held in November 2010, after which a jury returned verdicts finding Tucker guilty on all three counts. The district court sentenced Tucker to two consecutive life sentences.

Tucker now appeals arguing the evidence was insufficient to support his murder convictions, and that the district court erred in instructing the jury on felony-murder because the arson and the murder should have merged. For the reasons set forth herein, we affirm.

## I. First–Degree Murder of Angel Herman.

■ Tucker argues the evidence is insufficient to show he had the opportunity to kill Angel, and even if there was, the State failed to prove he acted deliberately or with malice aforethought. *See* Iowa Code §§ 707.1, 707.2(1). We review his challenge to the sufficiency of the evidence for the correction of errors at law. *State v. Hennings*, 791 N.W.2d 828, 832 (Iowa 2010). The jury's verdict is binding on appeal if it is supported by substantial evidence. *Id.* "Evidence is substantial if it would convince a rational trier of fact the defendant is guilty beyond a reasonable doubt." *State v. Jorgensen*, 758 N.W.2d 830, 834 (Iowa 2008). In making this determination, we view the evidence in the light most favorable to the State, including all legitimate inferences and presumptions that may be fairly and reasonably deduced from the evidence. *State v. Leckington*, 713 N.W.2d 208, 213 (Iowa 2006). Based upon the testimony and evidence presented at trial a reasonable juror could have found beyond a reasonable doubt that Tucker had the opportunity to and did kill Angel deliberately and with malice aforethought.

Cell phone records showed that there was an eleven minute window from when Tucker dropped off his friend and when the attack on Angel began. The drive from Tucker's friend's apartment to Angel's apartment was only 1.3 miles or about five minutes. Tucker clearly had the opportunity.

Overwhelming evidence also supports the jury's finding that Tucker murdered Angel. The clothes Tucker wore the night of Angel's death had blood stains on the right hand sleeve of his coat, the left side of his right shoe, the left leg of his jeans, the left leg cuff on his jeans, and two spots on the right leg of his jeans. DNA testing confirmed the blood to be Angel's. In addition, during the subsequent investiga-

tion into the deaths and fire, Tucker attempted to manipulate the police by telling at least three different stories. The stories included an attempt to blame the murder on his brother who was in California, and that the blood was transferred to him while engaging in sex with Angel while she was menstruating. *State v. Cox*, 500 N.W.2d 23, 25 (Iowa 1993) ("A false story told by a defendant to explain or deny a material fact against him is by itself an indication of guilty and the false story is relevant to show the defendant fabricated evidence to aid his defense.").

The evidence further shows Tucker murdered Angel deliberately and with malice aforethought. Angel died from blunt force trauma to the top left side of her head, fractures to her left and right jaws from multiple blows likely with an object, and three slicing wounds to her neck. A fire was then started on or near her body, with the reasonable inference being that this was done to destroy evidence. *State v. Buenaventura*, 660 N.W.2d 38, 49 (Iowa 2003) ("Premeditation [may be] shown by the nature of the crime and the defendant's actions afterwards."); *State v. Reeves*, 636 N.W.2d 22, 25 (Iowa 2001) ("The use of a deadly weapon accompanied by an opportunity to deliberate, even for a short period of time, is evidence of malice, deliberation, and premeditation."); *State v. Poyner*, 306 N.W.2d 716, 718 (Iowa 1981) ("[M]ultiple [stab] wounds refute any suggestion of inadvertence or mistake and supply strong evidence of malice and intent to kill.").

The circumstance of this case provided ample evidence from which a jury could find that Tucker acted deliberately and with a fixed purpose or design to kill Angel. We affirm his conviction as to Angel's murder.

## II. Arson Felony–Murder of Cyrus Shoup.

Cyrus died from carbon monoxide poisoning resulting from the fire which was intentionally started on or very near Angel's body. It does not appear the fire was set for the purpose of killing Cyrus. The fire was most likely set for the purpose of concealing evidence relating to the murder of Angel.

In the death of Cyrus, the case was submitted under the felony-murder alternative with first-degree arson serving as the predicate forcible felony. *See* Iowa Code §§ 702.11(1), 707.2(2), 712.2. Tucker argues that the district court erred in submitting the felony-murder alternative because the arson conviction should have merged with the murder conviction under the merger rule set forth in *State v. Heemstra*, 721 N.W.2d 549 (Iowa 2006). Put another way, Tucker asserts the act of arson caused Cyrus' death; therefore, there was no separate and distinct act for the felony-murder alternative to be submitted. We find Tucker's argument to rest on an unduly expansive view of the scope of the "merger rule" set forth in *Heemstra*.

In *Heemstra*, our supreme court overruled a line of cases to the extent they held that the act constituting willful injury and also causing the victim's death may serve as a predicate felony for felony-murder purposes. 721 N.W.2d at 558 *overruling State v. Beeman*, 315 N.W.2d 770, 777 (Iowa 1982); *and State v. Anderson*, 517 N.W.2d 208, 214 (Iowa 1994); *State v. Rhomberg*, 516 N.W.2d 803, 805 (Iowa 1994); *State v. Ragland*, 420 N.W.2d 791, 793 (Iowa 1988); *State v. Mayberry*, 411 N.W.2d 677, 682–83 (Iowa 1987). Instead, the supreme court held that if the act causing willful injury as a forcible felony is the same act that causes the victim's death, the former is merged into the mur-

der and cannot serve as the predicate felony for felony-murder purposes. *Heemstra*, 721 N.W.2d at 558. Accordingly, our court adopted what is known as the "merger rule." *Id.*

In explaining the basis for the merger rule, the supreme court recognized the concern that because a homicide generally results from the commission of an assault, i.e. "[d]eath is obviously a bodily injury," every felonious assault ending in death could automatically be elevated to first-degree murder. *Id.* at 555 (citing 4 Robert R. Rigg, *Iowa Practice Criminal Law (I)* § 3:16, at —— (2006)). For example, absent sound prosecutorial discretion, a friend who strikes another friend intending to cause serious injury, but instead causes death, could be charged with first-degree murder unless a merger rule existed. *Id.* at 555–56 (citing Kristy L. Albrecht, *Iowa's Felony -Murder Statute: Eroding Malice and Rejecting the Merger Doctrine*, 79 Iowa L.Rev. 941, 941 (1994)). This "bootstrapping" would usurp most of the law of homicide by relieving the prosecution of the burden of proving malice or specific intent in the great majority of homicide cases in order to obtain a first-degree murder conviction. *Id.* at 556–57 (quoting *People v. Ireland*, 70 Cal.2d 522, 75 Cal.Rptr. 188, 450 P.2d 580, 590 (1969)). Accordingly, applying the merger rule to assaults is supported by the policy of preserving the legislature's intent in making careful distinctions between the degrees of murder and manslaughter. *Id.* at 557.

■ To adopt Tucker's expansive reading of *Heemstra* by applying it to the predicate felony of arson would be contrary to the purpose of the merger rule. Unlike assault, using arson as the predicate felony does not frustrate the legislature's intent to establish gradations for assaultive conduct that results in death. Rather, application of the felony-murder

rule in the case of arson is consistent with the traditional purpose of the felony-murder rule: deterring people from committing those felonies that present a heightened risk of death to others by transforming the felony offense sought to be deterred into first-degree murder if a person is killed in the course of the felony, even though the felon had no specific intent or premeditation otherwise necessary to elevate the killing of another into first-degree murder. *Heemstra*, 721 N.W.2d at 554 ("The rationale of the felony-murder rule is that certain crimes are so inherently dangerous that proof of participating in these crimes may obviate the need for showing all of the elements normally required for first-degree murder."); *People v. Washington*, 62 Cal.2d 777, 44 Cal.Rptr. 442, 402 P.2d 130, 133 (1965) ("The purpose of the felony-murder rule is to deter felons from killing negligently or accidentally by holding them strictly responsible for killings they commit."). In addition, unlike the interplay between assault and murder, arson is simply not a less serious version of murder. Rather, it is a different crime altogether, one that requires the showing of a different intent. *Compare* Iowa Code § 707.1 (requiring a person to kill another with "malice aforethought either express or implied" for murder), *with id.* § 712.1(1) (requiring the "intent to destroy or damage ... property" for arson).

Further, we note that subsequent decisions from our supreme court have only applied the *Heemstra* merger rule in cases involving felonious assaults. *See State v. Tribble*, 790 N.W.2d 121, 129 (Iowa 2010) (upholding the submission of a felony-murder instruction in a case involving multiple assaults); *State v. Millbrook*, 788 N.W.2d 647, 653–54 (Iowa 2010) (upholding the submission of a felony-murder instruction because opening a van door in a drive by

shooting, thus aiding and abetting a conspirator in the commission of the assault of intimidation with a deadly weapon, was an independent act from firing his gun seven times). The supreme court has not extended the *Heemstra* merger rule beyond the context of felonious assaults, and for the policy reasons stated above, we find no basis to do so in this case.

In addition, although the supreme court has seemingly adopted a "two separate acts" approach for felony-murder, *see Tribble,* 790 N.W.2d at 128, we believe that approach is best served by limiting it to felonious assaults. To extend that approach to arson would effectively write arson out of the felony-murder statute. *See* Guyora Binder, *Making the Best of Felony Murder,* 91 B.U.L.Rev. 403, 521–22 (2011) (criticizing an argument for a "two separate acts" approach under which the traditional predicate felony of arson would be deemed to merge with any resulting homicide).

Finally, several states have refused to extend to merger rule to the forcible felony of arson. *See People v. Densmore,* 87 Mich.App. 434, 274 N.W.2d 811, 813–14 (1978); *State v. Grant,* 67 Ohio St.3d 465, 620 N.E.2d 50, 62 (1993); *Murphy v. State,* 665 S.W.2d 116, 119 (Tex.Ct.Crim.App. 1983).

The district court did not err in instructing the jury on the felony-murder alternative in this case. Further, there is overwhelming evidence in the record that Tucker intentionally and deliberately started the fire at Angel's apartment, a place where one or more persons could have been reasonably anticipated to be in or near, and that this fire caused Cyrus' death by carbon monoxide poisoning. *State v. Veverka,* 271 N.W.2d 744, 747 (Iowa 1978); *see also State v. Aswegan,* 331 N.W.2d 93, 97–98 (Iowa 1983), *overruled on other grounds by State v. Lyman,* 776 N.W.2d 865, 873 (Iowa 2010). Thus, we affirm Tucker's conviction for the felony arson murder of Cyrus.

## III. Conclusion.

The evidence is sufficient to show Tucker deliberately, intentionally, and with malice aforethought killed Angel Herman, and that he killed Cyrus Shoup while participating in the forcible felony of arson in the first degree. Thus, his convictions are affirmed.

**AFFIRMED.**