# IN THE COURT OF APPEALS OF IOWA

No. 14-2023
Filed March 23, 2016

**STATE OF IOWA,**
　　　　Plaintiff-Appellee,

**vs.**

**STEPHEN ALLEN BOEDING,**
　　　　Defendant-Appellant.
_____

　　　　Appeal from the Iowa District Court for Scott County, Thomas G. Reidel,

Judge.


　　　　Stephen Boeding appeals his conviction for murder in the first degree.

**AFFIRMED.**


　　　　Mark C. Smith, State Appellate Defender, and Nan Jennisch, Assistant

Appellate Defender, for appellant.

　　　　Thomas J. Miller, Attorney General, and Alexandra Link and Kelli Huser,

Assistant Attorneys General, for appellee.



　　　　Heard by Tabor, P.J., and Bower and McDonald, JJ.

**BOWER, Judge.**

Stephen Boeding appeals his conviction for murder in the first degree, in violation of Iowa Code sections 707.1 and 707.2 (2013). Boeding claims there is insufficient evidence to support his conviction for murder in the first degree because the State failed to prove he acted with malice aforethought and premeditation when he killed Kevin O'Connell. For the reasons stated below, we affirm.

## I.  BACKGROUND FACTS AND PROCEEDINGS

We incorporate the district court's statement of the factual background:

> Stephen Boeding, (hereinafter, "Boeding") and the decedent, Kevin O'Connell (hereinafter, "O'Connell") had been friends since meeting in Country Oaks [(a substance abuse program)] in 2007. The evidence supports that they were also intermittent sexual partners. On or about May 18, 2013, Boeding sent text messages to O'Connell accusing him of molesting him while he was passed out and indicating that he should press charges. Boeding also accused O'Connell of taking pictures of him while he was passed out. . . .  On May 24, 2013, Boeding agree[d] to come to O'Connell's apartment . . . .  After Boeding arrive[d], O'Connell and he [hung] out together and drank alcohol. At some point on May 25, 2013, Boeding strangled O'Connell causing O'Connell's death.
> After strangling O'Connell, Boeding remained in O'Connell's apartment for most of the day "stewing" on what to do next. Ultimately, Boeding arranged O'Connell's body, tucked a blanket around him, and then left to check himself into the Salvation Army facility in Davenport, Iowa. This occurred on May 27, 2013.
> On June 6, 2013, Michelle Schiltz, O'Connell's landlord, went to O'Connell's apartment. Ms. Schiltz testified that she had been unable to reach O'Connell by phone. When she arrived at his door, she went to slide a note between the door and the doorjamb when she noticed a smell that she recognized as the smell of a decaying body. Ms. Schiltz called her husband and also called 911. The door to O'Connell's apartment had a chain lock that was locked from the inside. A separate sliding patio door was not checked. The Davenport Police Department used bolt cutters to cut the chain. When officers arrived, they searched the apartment and discovered O'Connell's decomposing body in his bedroom. At that time, foul play was not suspected and the matter was not

investigated as a homicide. O'Connell was ultimately buried in Springfield, Illinois on June 12, 2013.

In mid-August of 2013, Stephen Boeding elected to have a conversation with his father-in-law, Laurence Weimer, Sr., (hereinafter, "Weimer"). . . . On the day in question, Boeding had been assisting Weimer in the remodeling project. After working on plastering, they took a break on the front porch. Boeding came out with an obituary of O'Connell's death and handed it to Weimer, told him he was responsible for the death, and proceeded to explain what had happened. Boeding stated, "I'm the reason why he is gone, why he is dead." Weimer testified as follows regarding what Boeding said, "Well, he said that he had been drinking and passed out on the bed face down, and he had awoken to O'Connell trying to penetrate him from the back, and he reached up and grabbed him and threw him down on the bed and proceeded to choke him, and then he said he blacked out, and when he (Boeding) started coming to, he seen some movement of his (O'Connell's) eyes, so he grasped him harder and choked him harder to make sure he was dead." Boeding further admitted to poking at O'Connell's eye to make sure he was dead. Boeding told him that after this happened he stayed in the apartment and stewed for a while, but further informed Weimer that he was not worried about getting caught because the police would not be able to "prove nothing" because the body sat in the apartment for a week and deteriorated . . . .

After Weimer told Detective Thomas [(of the Davenport Police Department)] about his conversation with Boeding, Detective Thomas arranged a meeting with Boeding. Boeding told Detective Thomas that he was at O'Connell's house on May 25, 2013. Boeding further stated that he passed out and woke up with his "anus hurting" and a rope around his neck. Boeding admitted grabbing O'Connell by the throat but claims he blacked out and that when he came to Kevin was not moving.

Boeding later met with Dr. Kirk Witherspoon, a psychologist who is licensed in Illinois and Iowa. Boeding admitted to Dr. Witherspoon that he might have killed O'Connell because when he woke up O'Connell was dead and his hands were near O'Connell's throat. Boeding said nothing about anal intercourse or attempted anal intercourse to Dr. Witherspoon. Dr. Witherspoon opined that Boeding was not able to form the specific intent to kill. Dr. Witherspoon believes Boeding has a somnambulism/automatism/ sleepwalking defense.

Boeding was also evaluated by Dr. Michael Taylor. Dr. Taylor is a licensed psychiatrist. Boeding did not tell Dr. Taylor that he was acting in self-defense. Dr. Taylor interpreted Boeding's comments to him as Boeding was angry to find O'Connell on top of him trying to have anal intercourse. Dr. Taylor opined that Boeding

was able to deliberate, premeditate and form the specific intent to kill.

The State charged Boeding with murder in the first degree, in violation of Iowa Code sections 707.1 and 707.2. Boeding waived his right to a jury trial and raised the defenses of justification and diminished responsibility. After a bench trial, the district court found Boeding guilty of murder in the first degree and sentenced him to life in prison.

## II. STANDARD OF REVIEW

We review sufficiency-of-the-evidence challenges for correction of errors at law. *State v. Turner*, 630 N.W.2d 601, 610 (Iowa 2001). "Evidence is substantial if it would convince a rational factfinder that the defendant is guilty beyond a reasonable doubt." *State v. Mitchell*, 568 N.W.2d 493, 502 (Iowa 1997). In making this determination, we view the evidence in the light most favorable to the State, including all legitimate inferences and presumptions that may be fairly and reasonably deduced from the evidence. *State v. Tucker*, 810 N.W.2d 519, 520 (Iowa Ct. App. 2012).

## III. MERITS

Boeding claims there is insufficient evidence to support his conviction for murder in the first degree because the State failed to prove he acted with malice aforethought and premeditation when he killed O'Connell. Iowa Code sections 707.1 and 707.2 provide that murder in the first degree is committed when "[a] person kills another person with malice aforethought either express or implied" and acted "willfully, deliberately, and with premeditation." We will discuss each challenged element separately.

### A. Malice Aforethought

Boeding claims he acted in a rage of passion or anger (in contradiction to a finding of malice aforethought) when he killed O'Connell. "Malice aforethought is a fixed purpose or design to do physical harm to another that exists before the act is committed. It does not have to exist for any particular length of time." *State v. Myers*, 653 N.W.2d 574, 579 (Iowa 2002). "Because this element is a state of mind, circumstantial evidence is generally used to prove malice." *State v. Buenaventura*, 660 N.W.2d 38, 49 (Iowa 2003). Evidence of bad feelings or quarrels between the defendant and the victim are circumstances that may be used to support a finding of malice aforethought. *See State v. Kellogg*, 263 N.W.2d 539, 542 (Iowa 1978).

In finding Boeding acted with malice aforethought, the district court relied on the testimony of Weimer (who the court found to be highly credible), the relationship between Boeding and O'Connell, and Boeding's act and method of killing O'Connell. The text messages sent between O'Connell and Boeding show Boeding was conflicted about their relationship and angry with O'Connell for molesting him and taking nude pictures of him. The messages also show Boeding's relationship with O'Connell was causing problems in Boeding's marriage. Further, the particularly brutal nature of the killing—strangling O'Connell twice and poking his eye to be certain of death—support the fact Boeding acted with malice aforethought. Dr. Denton, a forensic pathologist, testified O'Connell died of strangulation and the force applied to his neck causing fractures to his larynx would be characterized as "severe." Additionally, Boeding

told Weimer that after strangling O'Connell, "[h]e noticed eye movement, so he chose to choke [O'Connell] tighter to make sure that he was dead."

Upon our review, we find the district court did not err; substantial evidence supports the malice aforethought requirement for murder in the first degree.

**B.    Deliberation and Premeditation**

Boeding claims the State failed to prove he acted deliberately and with premeditation in killing O'Connell.  Additionally, Boeding claims because of his long-term alcohol use and "high" level of intoxication at the time of the killing, he was unable to form the specific intent.

"Premeditation may be shown through evidence of (1) activity by the defendant to plan the killing, (2) motive based on the relationship between the defendant and the victim, or (3) the nature of the killing . . . ." *Buenaventura*, 660 N.W.2d at 48.  "[T]he law does not require any minimum amount of time to premeditate and a few minutes are certainly adequate." *Id.* at 49.  "Premeditation [may be] shown by the nature of the crime and the defendant's actions afterwards."  *Id.*  To establish the defense of intoxication for the purpose of negating specific intent, Boeding must "produce substantial evidence to support" the defense.  *See State v. Guerrero Cordero*, 861 N.W.2d 253, 260 (Iowa 2015). "[T]he defense is not sustained by mere evidence of intoxication."  *Id.* at 261.

While there is a lack of evidence showing Boeding extensively planned the killing of O'Connell, a rational factfinder could conclude Boeding had "a sufficient opportunity to weigh in his mind, contemplate, and consider the consequences" before killing O'Connell.  *See State v. Wilkens*, 346 N.W.2d 16, 20 (Iowa 1984). As stated previously, evidence of Boeding strangling O'Connell twice to be

certain he was dead and evidence concerning Boeding's relationship with O'Connell supports the premeditation finding by the trial court. Finally, Boeding has not presented substantial evidence to demonstrate he lacked the mental ability "to act with the required specific purpose," or to support an intoxication defense.

We find the district court did not err in finding the State presented substantial evidence to support the premeditation requirement of murder in the first degree.

## IV. CONCLUSION

The evidence is sufficient to show Boeding deliberately, intentionally, and with malice aforethought killed O'Connell. Accordingly, the conviction for murder in the first degree is affirmed.

**AFFIRMED.**