# IN THE SUPREME COURT OF IOWA

No. 07–1563

Filed October 29, 2010

**STATE OF IOWA,**

Appellee,

vs.

**STANLEY ALAN TRIBBLE,**

Appellant.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Pottawattamie County, Gordon C. Abel, Judge.

Defendant seeks further review of a decision by the court of appeals affirming his conviction for first-degree murder, claiming the district court erred in submitting the theory of felony murder to the jury. **DECISION OF COURT OF APPEALS AND DISTRICT COURT JUDGMENT AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Dennis D. Hendrickson, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Kevin Cmelik, Assistant Attorney General, Matthew D. Wilber, County Attorney, and Jon J. Jacobmeier, Assistant County Attorney, for appellee.

**CADY, Justice.**

In this appeal, we must decide if the jury in a criminal prosecution was properly instructed by the district court on the felony-murder alternative to first-degree murder. On our review, we affirm the decision of the court of appeals and the judgment and sentence of the district court.

## I. Background Facts and Proceedings.

Stanley Tribble and Tracy Tribble were married. They resided in Council Bluffs and maintained stable employment. Tribble worked in the service department of an automobile dealership, and Tracy worked for a travel agency. While they enjoyed successful careers, their marriage, from the beginning, was plagued by discord. Police first responded to a report of domestic disturbance at their home three months after they were married in 2003. This domestic-abuse incident involving police intervention was followed by others in May 2005 and in February 2006. The disharmonious times were frequently accompanied by excessive consumption of alcoholic beverages by the couple, and friends sometimes intervened to referee their disagreements.

On May 1, 2006, Tribble and Tracy engaged in a loud argument in the presence of a friend, Chris Bryson. Although there was no display of physical violence, Tribble left the residence and spent the night at his sister's home. The next day, the acrimony continued. Tracy feared Tribble was attempting to get her fired from her employment and evicted from their home. Tribble told his sister, Joan Marion, and Bryson about his ongoing marital problems. In the evening of that day, Tracy gave a coworker a ride home from work. The coworker expressed concern for Tracy's safety, and the two women made plans to meet in the morning to get manicures before work. Tracy had planned to pick her up in the morning.

Later in the evening, around 11 p.m., Tracy called Marion on the telephone. Tracy was at home with Tribble at the time, and she was very upset about the couple's marital discord.

Tracy never met with her coworker in the morning as planned, and many telephone calls made to her residence went unanswered. Tracy's car, as well as her personal possessions, was discovered at her residence. Her dog, who was her constant companion, was picked up by animal shelter personnel. Tribble said Tracy was at home when he left for work in the morning, and he did not know where Tracy could be located. He suspected she had decided to leave the residence due to their marital discord sometime after he left for work. Tribble told several people he argued with Tracy for much of the previous night and slept very little.

Tracy's whereabouts remained a mystery until May 19, 2006, when her unclad body was found floating face down near the Iowa shore of the Missouri River in Council Bluffs, about four to five miles from her home. It was located in an area of the shore where debris from the river had accumulated.

Tracy had been the victim of horrific blunt-force injuries to her small-framed body. Her head sustained forehead and face contusions as well as multiple skull fractures. The fractures on her left eyebrow and forehead resulted in displacement of her cheekbone and her upper jaw. There were also fractures resulting in the separation of her left nasal bone and lacrimal bone from her upper jaw. On the right side of Tracy's head, one tooth was recently missing and another had been fractured. Contusions were present on her chest, upper abdomen, and thigh. The back of Tracy's scalp evidenced an injury on the left side of her head resulting in subcutaneous hemorrhaging. A toxicological analysis of her liver revealed an ethanol alcohol concentration of 0.25%.

The deputy state medical examiner found the injuries consistent with at least three separate blunt-force impacts to the head. He concluded asphyxia, a deprivation of oxygen caused by drowning, suffocation, or strangulation, was the probable cause of death. The blunt-force injury to the head causing hemorrhaging and the acute alcohol intoxication were significant other factors involved in her death, as these conditions likely caused an advanced impairment of her consciousness prior to death. Tracy was thirty-five years old.

Tribble was eventually arrested and charged with first-degree murder. At trial, an inmate testified Tribble told him that he just wanted Tracy to keep "her mouth shut," but after the initial blow, he felt there was no turning back. The inmate testified Tribble described a crunching or cracking sound as he hit Tracy. Another inmate testified Tribble said he killed Tracy around 1:30 a.m. or 2 a.m. and fabricated the story that she was in the house when he left for work in the morning.

At the conclusion of trial, the jury was instructed by the district court that it could find Tribble guilty of first-degree murder under two alternative theories. First, the jury was instructed on first-degree murder based on the willful, deliberate, and premeditated assault on Tracy. Second, the jury was instructed on the first-degree murder alternate theory that Tribble killed Tracy while participating in the forcible felony of willful injury causing serious injury. The State alleged Tribble participated in the forcible felony of willful injury when he inflicted the head trauma to Tracy and then killed her when he asphyxiated her either by smothering, strangling, or drowning her.

The jury returned a verdict of guilty to the crime of first-degree murder. The district court submitted a special interrogatory to the jury, which revealed ten jurors found Tribble guilty solely under the felony-murder

theory, one juror found him guilty solely under the premeditated murder alternative, and one found him guilty under both theories.

Tribble appealed. He claimed the district court erred in instructing the jury on the felony-murder alternative to first-degree murder because the evidence failed to support a finding that he engaged in two separate acts, one an assault and one causing death. Tribble argued that an act resulting in nonspecific asphyxia and acts resulting in blunt-force trauma are not separate and discrete acts to support felony murder, but are acts of a single assault. Additionally, Tribble argued separate acts of assault could not be established to support the felony-murder alternative because the head injuries resulting from the forcible felony of willful injury were contributing factors to Tracy's death. Ultimately, Tribble asserted willful injury cannot serve as a predicate felony under the felony-murder statute when the assault used to support the forcible felony of willful injury is a contributing factor in the death.

Tribble also claimed the district court erred in admitting hearsay testimony at trial and in admitting irrelevant and prejudicial evidence. He also claimed his trial counsel was ineffective for failing to object to testimony by a police officer concerning prior statements made by Tracy.

We transferred the case to the court of appeals. The court of appeals affirmed the conviction. It found the district court did not err in instructing the jury on the felony-murder alternative to first-degree murder. It also found any hearsay testimony admitted at trial constituted harmless error, as well as any irrelevant evidence that had been admitted. The court of appeals further found the record was inadequate to address the claim of ineffective assistance of counsel on direct appeal.

We granted further review. We did so to address the claim of error concerning the felony-murder instruction. The opinion of the court of

appeals stands as the final decision on the other issues raised on appeal. *See Everly v. Knoxville Cmty. Sch. Dist.*, 774 N.W.2d 488, 492 (Iowa 2009).

### II.  Scope of Review.

Tribble objected to the district court's instruction on felony murder as an alternative theory of murder in this case.  We review objections to jury instructions for errors at law.  *State v. Heemstra*, 721 N.W.2d 549, 553 (Iowa 2006).

### III.  Felony-Murder Doctrine.

The felony-murder rule began as a common-law doctrine of criminal law that any death resulting from the commission or attempted commission of a felony constitutes murder.  Model Penal Code and Commentaries § 210.2 cmt. 1, at 15 (1980) [hereinafter Model Penal Code].  It operates by eliminating proof of some of the elements of murder that would otherwise be necessary to prove if the death were prosecuted as murder without relying on the underlying felony offense.  40 Am. Jur. 2d *Homicide* § 65, at 655 (2008).

Most states limit the scope of the felony-murder rule.  2 Wayne R. LaFave, *Substantive Criminal Law* § 14.5, at 444–45 (2d ed. 2003) [hereinafter LaFave].  This limitation has predominantly been done by restricting the rule to certain types of felonies.  *Id.* § 14.5(b), at 447.  Felonies that have historically been used to support application of the felony-murder doctrine are those that are particularly serious or inherently dangerous.  *Id.* For example, the Model Penal Code only allows "robbery, rape or deviate sexual intercourse by force or threat of force, arson, burglary, kidnapping or felonious escape" to serve as the predicate felony.  Model Penal Code § 210.2(1)(b), at 13.  Other court-imposed limitations have been crafted by strictly interpreting the requirement of proximate causation, narrowly construing the period of time that the underlying felony is committed, or

requiring the underlying felony to be independent of the homicide. LaFave at 445–46.

Like most other states, our legislature has limited the felony-murder rule in several ways. One way our legislature limited the rule is by allowing only forcible felonies, in addition to some other special circumstances, to serve as the predicate offense. *See* Iowa Code § 707.2(2), (3), (5), (6) (2005). A forcible felony is defined in Iowa as "any felonious child endangerment, assault, murder, sexual abuse, kidnapping, robbery, arson in the first degree, or burglary in the first degree," subject to the exclusion of some types of assault, sexual abuse, sexual exploitation, and child endangerment. *Id.* § 702.11(1) (defining a forcible felony); § 702.11(2) (excluding specific offenses from the definition of forcible felony). One exclusion pertains to the assault crime of "willful injury." Our legislature has categorized "willful injury" as felonious assault. *Id.* § 708.4. The crime is committed when a person commits an unjustified act, "which is intended to cause serious injury to another" and either causes serious injury or bodily injury to another. *Id.* § 708.4(1), (2). However, only willful injury that causes serious injury is a forcible felony. *Id.* § 702.11(2)(*a*). Thus, only willful injury that causes serious injury can serve as a predicate felony under Iowa's felony-murder statute. A serious injury is defined as:

> *a.* Disabling mental illness.
> *b.* Bodily injury which does any of the following:
> (1) Creates a substantial risk of death.
> (2) Causes serious permanent disfigurement.
> (3) Causes protracted loss or impairment of the function of any bodily member or organ.
> *c.* Any injury to a child that requires surgical repair and necessitates the administration of general anesthesia.

*Id.* § 702.18(1). Accordingly, a person commits murder in the first degree under the felony-murder rule in Iowa when the person kills another person (with expressed or implied malice aforethought) while participating in a nonexempt forcible felony. *Id.* § 707.2(2); *see also id.* § 707.1 (defining murder as killing another with either expressed or implied malice aforethought); *State v. Galloway,* 275 N.W.2d 736, 738 (Iowa 1979) (stating malice aforethought is required, even under the felony-murder statute), *abrogated on other grounds by State v. Schutz,* 579 N.W.2d 317, 320 (Iowa 1998).

The Iowa felony-murder statute is limited in a second way by the statutorily prescribed time period during which the underlying felony must be committed. An element of felony murder requires the person be "participating in a forcible felony" during the time the person committed an act causing the death of another. Iowa Code § 707.2(2). Our legislature has defined this time period as

> commencing with the first act done directly toward the commission of the [underlying felony] and for the purpose of committing that offense, and terminating when the person has been arrested or has withdrawn from the scene of the intended crime and has eluded pursuers, if any there be.

*Id.* § 702.13. If the act causing death occurs beyond this time frame, the felony-murder rule is not applicable. *See State v. Philo,* 697 N.W.2d 481, 487 (Iowa 2005) (indicating the time period expires once a person is separated from the crime scene by some amount of distance without pursuers).

More recently, we interpreted the felony-murder statute to impose an additional limitation when the crime of willful injury causing serious injury is used as the predicate underlying felony. In *Heemstra,* we held willful injury cannot serve as a predicate felony under the felony-murder statute

when "the act causing willful injury is the same act that causes the victim's death." 721 N.W.2d at 558. Instead, the act intended to cause serious injury used to support the predicate willful-injury offense must be separate from the act that kills the other person while the person participates in the predicate willful-injury crime. *Id.* If the act or acts intended to cause serious injury were the same act or acts that caused death, the act or acts merge into the murder and cannot serve as a predicate felony. *Id.*

It is common for courts to require separation between acts supporting the ongoing predicate felony and the act resulting in death. In fact, factors have been identified to help determine whether the felony is separate from the act of killing. For example, many jurisdictions adopt the theory that the felony must be committed independently of the killing. LaFave at 444–45; *see also* Leonard Birdsong, *The Felony Murder Doctrine Revisited: A Proposal for Calibrating Punishment that Reaffirms the Sanctity of Human Life of Co-Felons Who Are Victims*, 33 Ohio N.U. L. Rev. 497, 498 n.12 (2007) (recognizing some states apply the felony-murder rule "only if the predicate felony is independent of, or collateral to, the homicide"). Time and distance can also be relied upon to determine if two acts are sufficiently separate to allow one to serve as the predicate felony for the other. In *Commonwealth v. Kilburn*, the Massachusetts court found the "short interlude" between the first assault and a shooting resulting in death supported two distinct acts. 780 N.E.2d 1237, 1240 (Mass. 2003).

While these factors, and others, may be helpful in some cases, the critical analysis will largely be driven by the facts of each case. *See id.* (indicating whether a felony is independent enough of a killing to invoke felony murder "defies categorical analysis" and should be determined case by case). This is the approach we followed in *State v. Millbrook*, ___ N.W.2d ___ (Iowa 2010) (applying fact-based analysis to the independent-act

requirement). The facts must first support an underlying forcible felony, then separately support an act or acts resulting in the killing of another. This approach is the essence of the felony-murder doctrine. When a person engages in conduct dangerous enough to be identified by our legislature as a predicate felony for felony murder, the elements of the felony-murder statute are satisfied if the person also engages in an act causing death while participating in the dangerous conduct. The statute places no legal test for the independent-act requirement.

One component of the independent-act requirement is the second act must kill another person. *See* Iowa Code § 707.2(2). In *Heemstra*, we indicated the second act must cause the death of another person. 721 N.W.2d at 557–58. Thus, while the evidence must establish the first act was an element of the predicate felony, the evidence must further establish that a separate act caused death to another. The evidence must establish both the act and that the act caused death. Without such evidence, the felony-murder doctrine does not apply.

Generally, causation exists in criminal law, often without much fanfare, as a doctrine justifying the imposition of criminal responsibility by requiring a "sufficient causal relationship between the defendant's conduct and the proscribed harm." *See State v. Marti*, 290 N.W.2d 570, 584 (Iowa 1980). When causation does surface as an issue in a criminal case, our law normally requires us to consider if the criminal act was a factual cause of the harm.[1] *See id.* at 584–85; *see also Thompson v. Kaczinski*, 774 N.W.2d 829, 836–39 (Iowa 2009).

The conduct of a defendant is a "factual cause of harm when the harm would not have occurred absent the conduct." Restatement (Third) of Torts:

---

[1] The nature of the argument presented by Tribble in this case does not require us to consider the element of causation beyond a factual-cause analysis.

Liability for Physical and Emotional Harm § 26, at 346 (2010) [hereinafter Restatement]. We have traditionally labeled this straightforward, factual cause requirement of causation the "but for" test. *See Marti*, 290 N.W.2d at 585 (stating the test for factual cause in a criminal case can be phrased as "but for the defendant's conduct, the harm or damage would not have occurred"). It operates to identify factual causation in each instance, but requires further assistance when multiple acts occur, each of which alone would have been a factual cause in the absence of the other act or acts. This assistance now comes in the form of a legal principle to govern the outcome. When such multiple causes are present, our law declares each act to be a factual cause of the harm. Restatement § 27, at 376.[2]

Tribble relies on the multiple-cause rule of the causation doctrine to build his case that independent acts to support the felony-murder doctrine did not exist in this case. While the facts of this case clearly supported a finding that the victim died from asphyxia, they also showed the acts offered by the State to establish the predicate felony contributed as substantial factors to death by asphyxia. Tribble uses the confluence of these causes to argue the felony-murder statute cannot apply to the predicate felony of willful injury when the act causing willful injury also causes death. In other words, he claims the separate acts cannot be independent under the felony-murder rule when they joined together as factual causes of death.

---

[2]Prior to our adoption of the Restatement (Third) of Torts in *Thompson*, we employed the "substantial factor" test to permit the fact finder to decide the existence of factual cause when multiple causes were present that alone would have been sufficient to be a factual cause of the harm. *See, e.g., Kelly v. Sinclair Oil Corp.*, 476 N.W.2d 341, 349 (Iowa 1991), *abrogated by Thompson* 774 N.W.2d at 837. This test was a necessary supplement to the "but for" test because the "but for" test could be applied by the fact finder to absolve multiple actors of responsibility when their separate acts would have caused the harm on their own. *Thompson*, 774 N.W.2d at 837 n.3. Thus, we abandoned the "substantial factor" test as unnecessary and replaced it with a legal rule that simply declares multiple causes that alone would have been a factual cause under the "but for" test to be factual causes. We no longer apply a special multiple-cause test, but rely on a straightforward rule.

The claim by Tribble can best be resolved by considering the purpose of the merger doctrine within the context of the purpose of the felony-murder rule. While a variety of justifications have been identified to support the felony-murder doctrine, the core reason is deterrence. Douglas Van Zanten, Note, *Felony Murder, the Merger Limitation, and Legislative Intent in* State v. Heemstra*: Deciphering the Proper Role of the Iowa Supreme Court in Interpreting Iowa's Felony-Murder Statute*, 93 Iowa L. Rev. 1565, 1570 (2008) [hereinafter Van Zanten]. The doctrine seeks to deter people from committing those felonies that present a heightened risk of death to others. The deterrence works by transforming the felony offense sought to be deterred into first-degree murder if a person is killed in the course of the felony, even though the felon had no specific intent or premeditation otherwise necessary to elevate the killing of another into first-degree murder. *See People v. Washington*, 402 P.2d 130, 133 (Cal. 1965) (recognizing purpose of felony murder is to deter felons by holding them responsible for killings they commit).

The purpose of the merger doctrine, otherwise known as the independent felony rule, is to exclude some types of homicide from the felony-murder statute. This limitation is particularly important when the underlying felony contains an assault element to the crime. Van Zanten at 1574. An assault element of the underlying felony makes it possible for the assault giving rise to the felony to also result in the death of another. The merger doctrine recognizes the felony-murder doctrine was not adopted in Iowa to redefine punishment for the underlying felony, but to eliminate the normal *mens rea* requirement for first-degree murder when a person kills another while participating in certain prohibited felonies. *See Heemstra*, 721 N.W.2d at 554. Thus, if the assault that serves as an element in the commission of the predicate felony under the felony-murder doctrine could

also be the act that kills another person, every such assaultive felony that causes death would be murder. *Id.* at 557; Kristy L. Albrecht, Note, *Iowa's Felony Murder Statute: Eroding Malice and Rejecting the Merger Doctrine*, 79 Iowa L. Rev. 941, 944–45 (1994); Van Zanten at 1574. Used in this way, the felony-murder doctrine would essentially limit the various degrees of murder, manslaughter, and other categories of homicides. Van Zanten at 1574. This approach to applying the felony-murder rule would also undermine the general notion that our justice system normally correlates punishment with criminal intent. *Id.* at 1569. In other words, our legislature adopted felony murder to deter the commission of felonies, but not by totally eliminating the relationship between criminal intent and criminal liability. Under the merger doctrine, a person is only guilty of felony murder if the act resulting in the predicate felony is independent of the act resulting in death. A single act causing death continues to be judged under the various categories of murder that essentially look to the degree of culpability based on the mental state of the offender. A single act giving rise to both the commission of the felony and death merges into murder, and culpability of conduct is determined under the various categories of murder.

As indicated, the independent-act requirement of the felony-murder doctrine basically relies on a fact-based analysis to satisfy the requirement. Yet, the independent acts are also identified by the harm that results from the act. The first act must relate to an element of the predicate felony, while the second independent act must kill another person. Clearly, this approach places causation in the analysis, but not in the manner urged by Tribble. The merger, or independent-act, doctrine relied on by Tribble only addresses the felony-murder concern over a single act causing death, not two separate acts causing death. The doctrine prevents felonious acts from becoming first-degree murder when the evidence fails to show there was a separate act

causing death. Thus, the purpose of the merger doctrine is not implicated when separate acts are identified, as long as the second act is identified by the evidence as an act causing death and the first act is identified by the evidence as a separate act supporting an element of the predicate felony. If the act supporting an element of the predicate felony also results in death to another, the concern of the merger doctrine does not materialize when the second separate act also results in death. Instead, the question is one of multiple causation, and our principles of factual causation do not relieve a person of criminal responsibility based on multiple acts when each act is regarded as a factual cause. *See* Restatement § 27 cmt. *c,* at 378 ("A defendant whose tortious act was fully capable of causing the plaintiff's harm should not escape liability merely because of the fortuity of another sufficient cause."). Our law recognizes two separate acts can join to cause death, but the result does not alter criminal responsibility for an act. *Id.* Causation only implicates the merger doctrine when the act supporting the commission of the predicate felony is a factual cause of death and the second act is not. If the act giving rise to the underlying forcible felony is the sole factual cause of death, then any subsequent separate act of violence not also a factual cause of death plays no role in the felony-murder analysis.

Accordingly, the law governing multiple factual causation is consistent with the purposes of the felony-murder doctrine and the merger doctrine. Merger seeks to prevent a felonious act alone from becoming first-degree murder and leaves the felony-murder doctrine available to elevate an independent homicidal act into first-degree murder without proof of the usual required *mens rea* for the purpose of deterring certain felonious conduct. As long as an independent act is a factual cause of death, the doctrines work to achieve their desired purposes.

In this case, substantial evidence supported a finding that an act of strangulation, choking, or drowning was a factual cause of Tracy's death by asphyxia. Substantial evidence also supported a finding of the commission of the forcible felony of willful injury causing serious injury based on a separate earlier act of blunt-force trauma to Tracy's head. The facts further supported a finding that the head trauma and asphyxia were inflicted by separate acts, with the head trauma occurring first followed by a separate act resulting in the asphyxia. Thus, separate, independent acts were identified by the evidence. Moreover, the evidence showed the act causing asphyxia was a factual cause of death. In fact, Tribble does not contest this evidence. Consequently, it is not important under the felony-murder analysis whether or not the separate earlier acts of blunt-force trauma were also a factual cause of death. If the acts of blunt-force trauma were also a factual cause of death, felony murder applies in this case because a separate act of asphyxia was also a factual cause. If the acts of blunt-force trauma were not a factual cause of death, felony murder likewise applies because the blunt-force trauma would satisfy the willful-injury elements of acts intended to cause serious injury and causing serious injury, followed by a separate act causing death by asphyxia.

We reject the claim by Tribble that the felony-murder statute is inapplicable when two independent acts both contribute to the death of the victim. Tribble makes no further challenge to the application of the felony-murder statute by attacking the sufficiency of evidence to support the other elements of felony murder. Accordingly, we conclude the district court did not err in instructing the jury on felony murder. We also conclude the court of appeals properly resolved the other issues raised by Tribble on appeal.

**IV. Conclusion.**

We have reviewed all the issues presented. The court of appeals correctly decided each issue. Accordingly, we affirm the decision of the court of appeals and affirm the judgment and sentence of the district court.

**DECISION OF COURT OF APPEALS AND DISTRICT COURT JUDGMENT AFFIRMED.**