# IN THE COURT OF APPEALS OF IOWA

No. 14-1239
Filed June 15, 2016

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**JAMES ALON SHORTER,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Polk County, Douglas F. Staskal,

Judge.

James Shorter appeals his judgment and sentence for second-degree

murder. **REVERSED AND REMANDED.**

Jennifer J. Bonzer of Johnson & Bonzer, P.L.C., Fort Dodge, for appellant.

Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant

Attorney General, for appellee.

Heard by Danilson, C.J., and Vaitheswaran and Tabor, JJ.

**VAITHESWARAN, Judge.**

James Shorter appeals his judgment and sentence for second-degree murder. He raises a number of claims, including a challenge to the sufficiency of the evidence supporting the jury's finding of guilt. We find this issue dispositive.

The jury was instructed that the State would have to prove the following elements of second-degree murder:

> 1. On or about August 25, 2013, the defendant, individually or through joint criminal conduct or through aiding and abetting another, assaulted Richard Daughenbaugh.
> 2. Richard Daughenbaugh died as a result of being assaulted.
> 3. The defendant, individually or through joint criminal conduct or someone he aided and abetted, acted with malice aforethought.

Shorter contends the State presented insufficient evidence to support the finding of guilt under any of the three posited theories: (1) individual conduct, (2) aiding and abetting, or (3) joint criminal conduct. "[W]e will uphold a verdict if substantial evidence supports it." *State* v. *Tyler*, 873 N.W.2d 741, 746-47 (Iowa 2016) (citation omitted).

## I. Sufficiency of the Evidence

### A. Individual Conduct

Shorter contends the State failed to prove he was one of the people who assaulted Daughenbaugh. Alternatively, he argues he "was not the 'but for' cause of Daughenbaugh's death."

The Iowa Supreme Court recounted the pertinent facts in *Tyler*, an opinion involving a separately tried codefendant. *See id.* at 744-45. The facts developed in Tyler's trial were similar but not identical to the facts developed in the joint trial

of Shorter, Yarvon Russell—whose appeal we resolve separately—and a third co-defendant who was acquitted.

A reasonable juror could have found that a crowd of up to forty teenagers left a concert in West Des Moines and gathered near a pedestrian bridge in downtown Des Moines, where they drank and partied. Richard Daughenbaugh tried to join the party. The crowd surrounded him ominously. Tyler punched him in the face, and Daughenbaugh fell to the ground. Other people took turns jumping on him.

Monica Perkins, who had been fishing on the bridge when the teenagers arrived, believed something was "going to happen." As the teenagers began attacking Daughenbaugh, she pushed through the crowd and attempted to protect him by spreading her body over his. Members of the crowd kicked her. Perkins retrieved her phone and called 911.

Daughenbaugh eventually died. The cause of death was internal bleeding due to a severely torn mesentery, a membrane connecting several body organs to the abdominal wall.

A detective with the Des Moines Police Department showed Perkins a photo array and asked her if she recognized anyone "from the scene from what she saw [of] the assault." Perkins identified Shorter. She again identified Shorter at trial, stating "he was one of the guys that stomped on [Daughenbaugh]" and "I seen him jump on his face." She acknowledged an inability to identify him during her deposition.

A teenager also identified Shorter as one of the people who kicked Daughenbaugh, although she denied Shorter's involvement when the police first

spoke to her. Another teenager testified Shorter called her the night of the assault and asked her to serve as his alibi. While she and others stated Shorter did not participate in the attack, it was the jury's function "to weigh the evidence and place credibility where it belong[ed]." *State v. Shanahan*, 712 N.W.2d 121, 135 (Iowa 2006). We conclude substantial evidence supported a finding that Shorter assaulted Daughenbaugh.

We turn to Shorter's fallback argument that the State failed to prove his assault caused Daughenbaugh's death. In his view, even if he "jumped on Daughenbaugh's head, the blow [he] delivered did not kill [Daughenbaugh]."

The Iowa Supreme Court has applied the Restatement (Third) of Torts to causation questions. *See Tyler*, 873 N.W.2d at 747-48. Under this standard, we must determine whether the criminal act "was a factual cause of the harm." *Id.* at 748 (quoting *State v. Tribble*, 790 N.W.2d 121, 126-27 (Iowa 2010)). This is synonymous with the traditional "but-for" test. *See id.* "Except where multiple acts contribute to cause a consequence, the determination of factual causation turns simply on whether the harm would not have occurred absent the [defendant's] conduct." *Id.* (citation omitted). Where multiple causes are present, "our law declares each act to be a factual cause of the harm." *Id.* (citation omitted).

In *Tyler*, the court found substantial evidence to support a finding that Tyler's punch was a factual cause of Daughenbaugh's death. *See id.* at 748-49. The court proceeded to analyze legal causation under the old "proximate cause" test and the more recent "scope of liability" test. *See id.* The court surmised "the chain of causation was far from attenuated" and the "group assault . . . was a

reasonably foreseeable consequence or within the range of harms of Tyler's initial act of knocking down Daughenbaugh with a punch to his head." *Id.* at 749. The court concluded "a reasonable juror could find that the fatal kicking and stomping was 'part of a chain of events set in motion by the assailant's act and leading directly to the victim's death.'" *Id.* (citation omitted).

The *Tyler* court's discussion of the causation issue is controlling. Even if Shorter's assault was directed to Daughenbaugh's head rather than his abdominal region, the assault was part of a chain of events that resulted in Daughenbaugh's death. The State proved the individual liability theory of second-degree murder.

### B.    Aiding and Abetting

The jury was instructed:

> "Aid and abet" means to knowingly approve and agree to the commission of a crime, either by active participation in it or by knowingly advising or encouraging the act in some way before or when it is committed. . . .  Mere nearness to, or presence at, the scene of the crime, without more evidence, is not "aiding and abetting."  Likewise, mere knowledge of the crime is not enough to prove "aiding and abetting."

Shorter contends there is insufficient evidence he "delivered the blows that led to Daughenbaugh's death," "advised or encouraged anyone to assault Daughenbaugh," "agree[d] with the other individuals who actually caused Daughenbaugh's death," or "cheered these people on." To the contrary, a reasonable juror could have found Shorter actively participated in inflicting one or more blows to Daughenbaugh's body or head and Shorter's act of kicking Daughenbaugh encouraged others to do the same. *See id.* at 750-51 ("Tyler's act of decking Daughenbaugh with a punch to his face after a crowd had

surrounded Daughenbaugh could be regarded as encouragement for what subsequently happened.").  Substantial evidence supported the jury's finding of guilt under an aiding and abetting theory.

### C.    Joint Criminal Conduct

Shorter contends the State failed to prove guilt under a joint criminal conduct theory.  In his view "[t]here is no showing [he] was acting in concert with the persons who caused the death of Daughenbaugh.  There is no evidence of an agreement to assault Daughenbaugh. . . .  There was no different crime committed.  Everyone was assaulting Daughenbaugh at the same time."

The jury received the following instruction on joint criminal conduct:

> When two or more persons act together and knowingly commit a crime, each is responsible for the other's acts done in furtherance of the commission of the crime or escape from the scene.  This is known as joint criminal conduct.  The defendant's guilt is the same as the other person's(s') unless the act(s) could not reasonably be expected to be done in furtherance of the commission of the crime.
> The State must prove all of the following elements:
> 1. The defendant acted together with at least one other person.
> 2. The defendant and the other person or persons knowingly participated in the crime of assault, as defined in Instruction No. 35. Participation is defined in Instruction No. 21.
> 3. While furthering the crime of assault, the other person or persons committed the different crime of murder, as defined in Instruction No. 24.
> 4. The defendant could have reasonably expected that the different crime of murder would be committed in furtherance of the crime of assault.

"Joint criminal conduct 'contemplates *two* acts—the crime the joint actor has knowingly participated in, and a second or resulting crime that is unplanned but could reasonably be expected to occur in furtherance of the first one.'"  *Id.* at 752 (citation omitted).  In other words, "there must be a joint crime in which the

defendant participates, followed by a second crime that may have been unplanned but involved reasonably foreseeable conduct in furtherance of the first crime." *Id.*

In *Tyler*, the court found substantial evidence of two separate assaults—the first committed by Tyler, and the second committed by several people in the crowd. *See id.* However, the court found only speculative evidence that Tyler committed the first crime in concert with others. *See id.* at 752-53. Accordingly, the court reversed the finding of guilt under the joint criminal conduct theory.

In Shorter's case, the first crime was the group attack after Daughenbaugh fell to the ground. As discussed, substantial evidence supports a finding that Shorter participated in the group attack and assaulted Daughenbaugh in concert with other people.

The problem lies with the State's proof of a second crime in furtherance of the group attack. Substantial evidence does not support a finding of a second crime. *See State v. Smith*, 739 N.W.2d 289, 294 (Iowa 2007) (concluding act of assisting in obtaining a handgun used to shoot a deputy was not a separate crime from the crimes charged). At most, the evidence shows Shorter acting as a principal or as an aider and abettor in a single crime. *See id.* at 293-94 (discussing the distinction between aiding and abetting and joint criminal conduct).

However, even if we could parse the group attack into multiple assaults, the State failed to establish the sequence of those assaults. While the jury was told Daughenbaugh died as a result of blows to his abdomen, we do not know whether the other blows occurred before or after Shorter kicked Daughenbaugh.

Without this knowledge, there was insubstantial evidence that the second crime was "in furtherance of" Shorter's assault. Accordingly, the State's proof was insufficient under the joint criminal conduct theory.

## II.    *Disposition*

Having found the joint criminal conduct theory unsupported by substantial evidence, we are obligated to reverse and remand for a new trial because we have no way of knowing whether the jury found Shorter guilty individually, as an aider and abettor, or under a theory of joint criminal conduct. *See Tyler*, 873 N.W.2d at 753-54. In light of our disposition, we find it unnecessary to address the remaining issues raised by Shorter.

**REVERSED AND REMANDED.**