# IN THE COURT OF APPEALS OF IOWA

No. 15-1386
Filed January 11, 2017

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**JUAN ANTONIO NINO-ESTRADA,**
        Defendant-Appellant.

_____

Appeal from the Iowa District Court for Woodbury County, Jeffrey L. Poulson, Judge.

Juan Nino-Estrada appeals the judgment and sentence imposed after a jury found him guilty of two counts of first-degree murder, one count of attempted murder, and one count of willful injury. **AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Nan Jennisch, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Linda J. Hines, Assistant Attorney General, for appellee.

Heard by Danilson, C.J., and Doyle and McDonald, JJ.

**DOYLE, Judge.**

Juan Nino-Estrada appeals the judgment and sentence imposed after a jury found him guilty of two counts of first-degree murder, one count of attempted murder, and one count of willful injury. He challenges the adequacy of the jury instructions regarding both murder charges, as well as the sufficiency of the evidence to support one count of first-degree murder. He also argues the trial court erred in denying his motion to suppress evidence.

**I. Background Facts and Proceedings.**

Nino-Estrada's convictions stem from events that occurred on the night of November 7, 2013. Louis Sanchez, a drug dealer, was in the attic room of his home conducting drug transactions while a group of people, including Nino-Estrada, gathered with him and smoked methamphetamine. At one point in the evening, an argument began between Nino-Estrada and Sanchez, and Nino-Estrada drew a gun and pointed it at Sanchez.

Michael Delgado, who had been living in the basement of the home, entered the room pointing a gun at Nino-Estrada. After Nino-Estrada turned his gun on Delgado, they left the room and a scuffle ensued on the stairway landing outside the room. Four or five gunshots were fired. Sanchez went to stairway landing's door and was shot in the knee by Nino-Estrada. Nino-Estrada chased Delgado back into the room and fired several shots at Delgado, who was attempting to hide behind a desk. Delgado, who had been shot in the leg and elbow, then attempted to crawl to the room's door. Nino-Estrada shot him in the back of the head.

Nino-Estrada then turned his gun to Sanchez. The gun misfired when he pulled the trigger, and Sanchez grabbed Nino-Estrada and pulled him to the floor. As the two men fought, another person in the room attempted to stab Nino-Estrada but accidentally stabbed Sanchez in the back. Sanchez survived both the stabbing and the gunshot wound to his knee. Delgado died from his gunshot wounds, as did Yolanda Valdez, a bystander who was hit by stray gunfire.

Nino-Estrada fled the house and drove to his girlfriend's apartment with both his gun and Delgado's gun in his possession. Law enforcement officers located Nino-Estrada at the apartment a short time later and transported him to the hospital for treatment of a gunshot wound to his leg. Afterward, he was transported to the police station and interviewed about the night's events. Nino-Estrada denied he had been at Sanchez's home, instead claiming he was shot while walking down the street.

The State filed a trial information charging Nino-Estrada with two counts of first-degree murder, attempted murder, and willful injury. Nino-Estrada moved to suppress statements made during his interrogation, alleging law enforcement failed to inform him of his constitutional rights in violation of *Miranda v. Arizona*, 384 U.S. 436, 473-76 (1966). The trial court denied the motion. A trial was held, and a jury found Nino-Estrada guilty as charged. He was sentenced to lifetime imprisonment. Nino-Estrada appeals.

**II. First-Degree Murder of Delgado.**

Nino-Estrada first challenges the jury instructions marshaling the elements of first-degree murder with respect to Delgado. Because an objection to the instruction was never made before the trial court, Nino-Estrada admits error is

not preserved. *See State v. Fountain*, 786 N.W.2d 260, 262 (Iowa 2010). He instead argues his trial counsel was ineffective in failing to object to the erroneous instruction. Therefore, we analyze his claims under an ineffective-assistance rubric. *See id.* at 263.

To succeed on an ineffective-assistance-of-counsel-claim, a defendant must show that counsel failed to perform an essential duty and, as a result, prejudice occurred. *See State v. Effler*, 769 N.W.2d 880, 890 (Iowa 2009). Unless the defendant proves both prongs, the ineffective-assistance claim fails. *See State v. Clay*, 824 N.W.2d 488, 495 (Iowa 2012).

The State charged Nino-Estrada with the first-degree murder of Delgado under the felony-murder rule. Under this rule, a person who kills another while participating in a nonexempt forcible felony is guilty of felony murder. *See State v. Tribble*, 790 N.W.2d 121, 125 (Iowa 2010). The trial court instructed the jury that to find Nino-Estrada guilty of murder as charged in count I of the trial information, the State was required to prove the following:

> 1. On or about the 7th day of November, 2013, [Nino-Estrada] shot [Delgado].
> 2. [Delgado] died as a result of being shot.
> 3. [Nino-Estrada] acted with malice aforethought.
> 4. That one or both of the alternatives occurred:
>
> > *Alternative A*: [Nino-Estrada] acted willfully, deliberately, premeditatedly and with a specific intent to kill another person.
> >
> > *Alternative B*: [Nino-Estrada] fired a shot or shots other than the shot that killed [Delgado] which constituted [Nino-Estrada] participating in the offense of Willful Injury as follows:
> >
> > > (1) On or about the 7th day of November, 2013, [Nino-Estrada] did an act which was intended to:
> > >
> > > > a. Cause pain or injury to [Delgado] or to [Sanchez], or

> b. Result in physical contact which was insulting or offensive to [Delgado] or to [Sanchez], or
> c. Place [Delgado] or [Sanchez] in fear of an immediate physical contact which would have been painful, injurious or offensive to him, and
> (2) [Nino-Estrada] had the apparent ability to do the act, and
> (3) [Nino-Estrada]'s act caused a serious injury to [Delgado] or to [Sanchez] . . . .

Nino-Estrada claims his trial counsel had a duty to object to the marshaling instruction for first-degree murder because it violated the felony-murder rule. Specifically, he complains that one of the two alternative predicate felonies for willful murder set forth in "Alternative B"—the willful injury of Delgado—runs afoul of *State v. Heemstra*, 721 N.W.2d 549, 558 (Iowa 2006), in which our supreme court held that "if the act causing willful injury is the same act that causes the victim's death, the former is merged into the murder and therefore cannot serve as the predicate felony for felony-murder purposes." Nino-Estrada argues the act of willfully injuring Delgado was the same act that caused Delgado's death. He further argues the conviction cannot stand because the jury returned a general verdict and we cannot determine whether the jury convicted him on an improper legal theory. *See State v. Hogrefe*, 557 N.W.2d 871, 881 (Iowa 1996) (stating "with a general verdict of guilty, we have no way of determining which theory the jury accepted").

Even assuming counsel breached an essential duty by failing to object to the marshaling instruction at issue, Nino-Estrada cannot show prejudice. In order to prove the prejudice required to succeed on an ineffective-assistance-of-counsel claim, a defendant must show a reasonable probability that the outcome

of the proceeding would have been different if counsel had performed competently. *See Clay*, 824 N.W.2d at 496. The defendant bears the burden of proving prejudice by a preponderance of the evidence. *See id.* "In determining whether this standard has been met, we must consider the totality of the evidence, what factual findings would have been affected by counsel's errors, and whether the effect was pervasive or isolated and trivial." *Id.* (citation omitted).

A jury instruction that submits an issue to the jury that is unsubstantiated by the evidence is generally prejudicial. *See State v. Tejeda*, 677 N.W.2d 744, 754-55 (Iowa 2004). However, because Nino-Estrada raises this issue as an ineffective-assistance claim, whether an error in the marshaling instruction would have required reversal if it had been preserved for direct appeal is irrelevant. *See id.* Rather, Nino-Estrada "must affirmatively demonstrate counsel's alleged deficiency undermines our confidence in the verdict and therefore resulted in prejudice entitling him to a new trial, regardless of whether his claim would require reversal if it were before us on direct appeal." *State v. Thorndike*, 860 N.W.2d 316, 321-22 (Iowa 2015). If "the submission of a superfluous jury instruction does not give rise to a reasonable probability the outcome of the proceeding would have been different had counsel not erred, in the context of an ineffective-assistance-of-counsel claim, no prejudice results." *Id.* at 322. He cannot meet his burden.

First we note the alternative B for felony murder was not argued by the State in closing arguments concerning Delgado's death. In closings, the State acknowledges that the jury was given two alternatives, but the State only argues

the jury should find Nino-Estrada guilty based upon premeditated murder, alternative A. If counsel had objected and the instruction and the felony-murder alternative based on the willful injury of Delgado had been omitted, there is ample evidence by which the jury could have found Nino-Estrada guilty of murder in the first degree based upon alternative A, premeditated murder. Therefore, this ineffective-assistance claim fails.

### III. First-Degree Murder of Valdez.

Nino-Estrada next challenges his conviction for murder of Valdez. He challenges both the sufficiency of the evidence supporting a conviction under the felony-murder alternative and the jury instruction marshalling the elements of first-degree murder of Valdez under the felony-murder alternative.

### A. Sufficiency of the Evidence.

Nino-Estrada first claims there is insufficient evidence supporting his conviction of first-degree murder of Valdez as set forth in the felony-murder alternative in the marshalling instruction. He claims the State failed to prove beyond a reasonable doubt that he killed Valdez during the commission of the predicate felony. Because his trial counsel failed to raise this claim before the trial court with the necessary specificity to preserve error on direct appeal, he again raises this claim under as a claim of ineffective assistance of trial counsel.

Valdez was shot and killed by a stray bullet at some point during the evening, and her death was not discovered until after the shooting had ended and Nino-Estrada had fled. There is no direct evidence as to precisely when Valdez was shot and killed. Nino-Estrada asserts that if Valdez was shot before Delgado and Sanchez, her death would have occurred before the commission of

the predicate felony—not during—and therefore the felony-murder rule would not apply.

Iowa Code section 707.2(1)(b) states that a person commits murder in the first degree when the person "kills another person while participating in a forcible felony." A person is "participating" in a public offense

> during part or the entire period commencing with the first act done directly toward the commission of the offense and for the purpose of committing that offense, and terminating when the person has been arrested or has withdrawn from the scene of the intended crime and has eluded pursuers, if any there be. A person is "participating in a public offense" during this period whether the person is successful or unsuccessful in committing the offense.

Iowa Code § 702.13.

Nino-Estrada was participating in a forcible felony at any point during which he was firing at Delgado or Sanchez. There is no dispute that Valdez was struck by stray gunfire while Nino-Estrada was firing on Delgado or Sanchez. Because it is irrelevant if Valdez was killed before Nino-Estrada was successful in his attempts at shooting Delgado or Sanchez, his trial counsel had no duty to challenge the sufficiency of the evidence relating to whether Valdez was killed during participation in a forcible felony. His ineffective-assistance-of-counsel claim fails.

**B. Marshaling Instruction.**

In the alternative, Nino-Estrada claims the trial court improperly instructed the jury with regard to the felony-murder alternative as to Valdez. Specifically, he

complains that the alternative set forth in "Alternative B"[1] of the marshaling instruction allowed the jury to find him guilty if he "fired a shot or shots other than the shot that killed Yolanda Valdez" while participating in the offense of willful injury. Nino-Estrada argues the instruction is erroneous because it allowed the jury to treat multiple gunshots as one course of conduct.

Again, assuming counsel breached an essential duty by failing to object to the marshaling instruction and the district court submitted an instruction that more clearly stated felony-murder cannot be based on one course of conduct, there is still ample evidence by which the jury could have found Nino-Estrada committed murder. Accordingly, Nino-Estrada's ineffective-assistance claim fails.

**IV. Motion to Suppress.**

Finally, Nino-Estrada challenges the denial of his motion to suppress statements he made to law enforcement that he alleges were in violation of *Miranda*, 384 U.S. at 473-76. We review his claim de novo. *See State v. Turner*, 630 N.W.2d 601, 606 (Iowa 2001). In doing so, we independently evaluate the totality of the circumstances as shown by the entire record. *See id.* This includes the evidence presented at the suppression hearing, as well as the evidence introduced at trial. *See State v. Brooks*, 760 N.W.2d 197, 203-04 (Iowa 2009). We give deference to the trial court's fact findings but they are not binding. *See Turner*, 630 N.W.2d at 606.

Law enforcement must inform a suspect of the constitutional right to remain silent during a custodial interrogation. *See Effler*, 769 N.W.2d at 886.

---

[1] The marshaling instruction for the first-degree murder of Valdez is identical to the marshaling instruction for first-degree murder of Delgado set forth above, except Valdez's name is substituted for Delgado's in the appropriate places.

Once the suspect invokes the right to counsel, the interrogation must stop immediately until an attorney is present. *See id.* If the suspect has not received *Miranda* warnings and provided a valid waiver of those rights, any statements made during the interrogation are inadmissible. *See id.*

On appeal, Nino-Estrada argues his constitutional rights were violated at three separate points during the police investigation: (1) when police questioned him while he was still inside his girlfriend's apartment, (2) while the questioning continued outside the apartment building, and (3) during his interview at the police station. We address each of his claims in turn.

### A. Statements Inside the Residence.

After identifying Nino-Estrada as the suspect in the shooting, law enforcement officers attempted to locate him at his girlfriend's apartment. Three adults and small children were inside the apartment when police arrived. After the officers gained entrance into the apartment, they located Nino-Estrada in a bedroom. The district court summarized the events that occurred thereafter:

> Officer [Greg] Rose directed [Nino-Estrada] to the ground and proceeded to handcuff [Nino-Estrada]. A female voice stated [Nino-Estrada] had been shot and blood was observable on his lower extremities. Officer Rose also noticed a loaded small caliber round on the floor near [Nino-Estrada]. While still on the ground, Officer Rose questioned [Nino-Estrada] about the location of the gun. [Nino-Estrada] denied having a gun and informed officers of his injuries. At this time, officers were aware multiple parties had been shot, and [Nino-Estrada] was suspected of having a gun, which had not yet been located. Officers also testified about the safety concerns surrounding a discarded and possibly loaded firearm for the adult and minor occupants of the apartment, the officers, and the public at large.

Nino-Estrada moved to suppress any statements made in response to Officer Rose's questions while inside the apartment because Nino-Estrada was

not first provided a *Miranda* warning. The State argued, and the trial court agreed, Officer Rose's questions fell within the public safety exception to the *Miranda* requirement.

The public safety exception allows police officers to question a suspect without first providing *Miranda* warnings if the questions are "reasonably prompted by a concern for the public safety" and the elicited responses do not violate *Miranda*. *State v. Lowe*, 812 N.W.2d 554, 579 (Iowa 2012) (citation omitted). For the public safety exception to apply, there must be a threat to public safety and an "immediate necessity" for the information the officer seeks to obtain by questioning a suspect in violation of *Miranda*. *Id.* For instance, a missing gun in a field creates "sufficient exigency" to justify pre-*Miranda* questioning. *Id.*

Here, Officer Rose had reason to believe Nino-Estrada left Sanchez's residence with two guns. The officers did not find any guns in the bedroom where Nino-Estrada was hiding, nor were any guns on his person. Officer Rose testified he did see a small caliber round of ammunition on the bedroom floor. Because he believed Nino-Estrada had two guns in his possession and the police were unable to locate either, Officer Rose was concerned that a loaded gun may have been in the apartment and accessible to one of the adults or the children present. Because the officer had good cause to believe a loaded weapon presented an immediate risk to the public, the public safety exception applies. *See New York v. Quarles*, 467 U.S. 649, 657 (1984); *In re J.D.F.*, 553 N.W.2d 585, 588 (Iowa 1996).

**B. Statements Outside the Residence.**

The officers helped Nino-Estrada go outside the apartment building to wait for medical personnel to arrive and treat his injuries. Either before or after Nino-Estrada was advised of his *Miranda* rights, Officer Rose continued questioning Nino-Estrada about the guns' location(s). The district court set forth the facts pertinent to this discussion as follows:

> Detective Jeremy McClure of the Sioux City Police Department arrived on the scene as [Nino-Estrada] was being helped down the stairs. Officer Rose requested Detective McClure to provide [Nino-Estrada] with a *Miranda* warning, which he did. . . . Officer Rose continued to question [Nino-Estrada] about the location of the gun and voiced concerns if one of the children or a member of the public were to find the gun. [Nino-Estrada] continued to provide verbal and nonverbal evasive answers, at one point alleging the gun had been dropped in an alley or yard a couple of blocks away. . . . Officer Rose testified Detective McClure gave the warning immediately and [Nino-Estrada] stated he understood. Detective McClure testified that he gave the warning, but could not clearly recall whether it was given before or after he retrieved a medical kit from his vehicle and began to address [Nino-Estrada]'s injuries or Officer Rose's questioning about the location of the gun.

Nino-Estrada argues the trial court should have suppressed his responses during this questioning because Detective McClure could not clearly recall if he gave Nino-Estrada the *Miranda* advisory before or after Officer Rose continued questioning Nino-Estrada about the guns' location(s). However, even assuming Detective McClure advised Nino-Estrada of his *Miranda* rights after Officer Rose finished questioning Nino-Estrada about the location of the gun, Nino-Estrada's constitutional rights were not violated. Because no guns had been discovered, the same concerns that existed inside the apartment continued to exist after law enforcement moved Nino-Estrada outside the building. Therefore, the public

safety exception continued to apply to Officer Rose's questioning outside the apartment building.

### C. Statements at the Police Station.

Nino-Estrada was transported to the hospital and received medical treatment. Afterward, Officer Rose transported Nino-Estrada to the police station for a videotaped interview conducted by Detectives Mike Simons and Troy Hansen. The district court summarized the interview, which began at approximately 4:45 a.m., as follows:

> [Nino-Estrada] was asked a series of questions regarding biographical information, as is standard procedure. The detectives also observed the extent of [Nino-Estrada]'s injuries. After approximately ten minutes, Detective Simons asked [Nino-Estrada] if he could ask some questions about the night's events and how [Nino-Estrada] was shot. [Nino-Estrada] agreed. Detective Simons then provided [Nino-Estrada] with a [*Miranda*] warning. [Nino-Estrada] was not asked to sign a waiver, but was asked if he understood his rights. [Nino-Estrada] indicated that he did. The detectives interrogated [Nino-Estrada] for approximately one hour, during which the detectives could understand [Nino-Estrada]'s statements. [Nino-Estrada] would comment on his injuries and pain from time to time throughout the questioning. [Nino-Estrada] did not request further medical treatment for his injuries. Detective Simons described [Nino-Estrada] as being lucid, maintaining eye contact, and able to understand the detective statements. [Nino-Estrada] did not indicate an unwillingness to speak about the night's events. [Nino-Estrada] did not ask to consult an attorney until just before 6 a.m. The detectives stopped questioning [Nino-Estrada] regarding the investigation and provided [Nino-Estrada] with a phone book. The detectives left the room and officers entered to place [Nino-Estrada] under arrest.

Nino-Estrada argues any statements he made during this interview should have been suppressed because the detectives failed to give him a *Miranda* warning at the start of the interview. He also alleges he did not knowingly and intelligently waive his *Miranda* rights and that his statements were not given

voluntarily because they were made just after he had been released from the hospital for treatment of his gunshot injury and he was in pain. Nino-Estrada never raised this issue to the trial court, and therefore, any error is not preserved for our review. Because Nino-Estrada instead alleges his trial counsel was ineffective in failing to move to suppress the statements made during his custodial interrogation on these grounds, we review his claim under the ineffective-assistance rubric.

Assuming trial counsel failed to perform an essential duty by not moving to suppress the statements made during the police interview, Nino-Estrada's ineffective-assistance claim fails because he has failed to show it prejudiced him. *See State v. Parker*, 747 N.W.2d 196, 210 (Iowa 2008) (noting that if sufficient prejudice is not shown, the court need not address whether counsel breached an essential duty). Nino-Estrada did not make any incriminating statements during the interview. He did make a number of highly improbable claims during the interview, which indicate guilt. *See State v. Odem*, 322 N.W.2d 43, 47 (Iowa 1982) ("A false story told by a defendant to explain or deny a material fact against him is by itself an indication of guilt."). However, it is not reasonable to attribute the jury's finding of guilty to the conflicting claims Nino-Estrada made during the interview in light of the overwhelming amount of other evidence showing his guilt*. See State v. Casady*, 597 N.W.2d 801, 806 (Iowa 1999) (concluding no prejudice occurred when the case against the defendant was "very substantial"). Because Nino-Estrada cannot show a reasonable probability that the result of the proceeding would have been different if his statements

during the police interview had been suppressed, his ineffective-assistance-of-counsel claim fails.

**AFFIRMED.**